UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REMBRANDT DIAGNOSTICS, LP,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>INNOVACON, INC.,<br><br>　　　　　　　　　　　Defendant. | Case No.: 3:16-cv-0698 CAB (NLS)<br><br>**ORDER ON JOINT MOTION FOR DISCOVERY DISPUTE NO. 1 DENYING REMBRANDT'S MOTION TO COMPEL**<br><br>**(ECF Nos. 127, 130)** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 1. ECF Nos. 127, 130. A redacted version the Joint Motion was filed contemporaneously with the Joint Motion to File Documents under Seal. ECF Nos. 125, 127. The Court granted the Motion to File Documents under Seal on September 12, 2017. ECF No. 129. For the reasons outlined herein, plaintiff Rembrandt Diagnostics, LP's ("Rembrandt") motion to compel further responses and documents from defendant Innovacon, Inc. ("Innovacon") is **DENIED**.

I. **BACKGROUND**

In this case, Rembrandt accuses Innovacon of breaching a Patent License Agreement. *See* ECF No. 94, Exhibit 6 to the Second Amended Complaint ("SAC"). Under the licensing agreement, Rembrandt's predecessor granted Innovacon's

1

predecessor a license to several U.S. and foreign patents relating to test cups used to quickly screen urine for illegal drugs. Under the agreement, Innovacon's predecessor agreed to pay Rembrandt's predecessor royalties for each test cup sold that would otherwise infringe the patents. Innovacon has paid no royalties. It contends that no royalties are owed because the licensed patents are invalid and because the test cups it and its Affiliates sold during the relevant time period do not infringe the patent.

Rembrandt issued various interrogatories, requests for production, and requests for email production seeking discovery related to their claims and theories of the case. *See generally,* ECF No. 127-1, 130-1 (Joint Statements, redacted and sealed). Relevant to the Joint Motion before the Court, Innovacon responded to the discovery requests by, *inter alia,* limiting its responses to the accused products, representative products, a limited timeframe, by reference to documents, or with objections that the requests were disproportionate to the needs of the case. *Id.* The parties met and conferred regarding their positions relative to the discovery and responses, but were unable to informally resolve them and filed a Joint Motion for Determination of Discovery Dispute No. 1. ECF Nos. 127, 130. The Joint Motion consisted of 196 pages and presented nine separate issues affecting numerous interrogatories and requests for production.

In response to the voluminous discovery dispute, this Court directed lead trial counsel to further meet and confer, in person, to narrow or limit the discovery disputes before the Court, and set oral argument for September 27, 2017. ECF No. 128. In advance of the oral argument, the parties filed a Joint Status Report advising the Court that as a result of the continued meet and confer efforts, the parties had resolved Issues 3 and 7, and had narrowed the interrogatories and production requests that were in dispute for certain other issues.[1] ECF No. 131. The Court thanks the parties for their efforts and

---

[1] Specifically, the parties resolved: Issue 2, RFP No. 24; Issue 3 entirely, encompassing Interrogatories 1, 9 and RFP Nos. 21 and 49; Issue 4, RFP No. 9; Issue 7 entirely, encompassing RFP Nos. 41, 56 and 57; and Issue 9, RFP 7. ECF No. 131.

for the submission of the Joint Status Report, and will not address those issues, interrogatories, and requests for production on which the parties reached agreement, except to set deadlines for compliance with their agreement.

## II. LEGAL STANDARD

Rule 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

"The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016). The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." *Id.* Discovery and Rule 26 is intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id.* This requires active involvement of federal judges to make decisions regarding the scope of discovery. *Id.*

## III. DISCUSSION

Following the meet and confer efforts of the parties, the issues that remain before the Court are each addressed individually.

### a. Issue 1: Limiting Responses and Production to Test Cups Identified in the Pleadings and Infringement Contentions and those Substantially Similar in Design (Interrogatories 1, 6, 9, 14, 18, 19 and Requests for Production 1-4, 11, 15-18, 21-28, 32-40, 42-43, 45, 47-49, 51-55, 57, 58, 68, 85)

The parties reached agreement on how to proceed on this issue, which the Court includes here only to set deadlines as discussed at oral argument:

Innovacon is to produce two samples of each of the test cup designs agreed upon by counsel in their Joint Status Report (ECF No. 131) by Monday, **October 2, 2017**. Rembrandt is to inform Innovacon by Friday, **October 6, 2017** if Rembrandt believes any of the produced test cups infringe the patent and are therefore subject to the licensing agreement. For any cup that Rembrandt believes to be infringing, Rembrandt must seek leave to amend its infringement contentions and produce revised infringement contention charts by Friday, **October 20, 2017**. In the event Plaintiff proceeds to amend its infringement contentions as to any of the test cups produced pursuant to the agreement of the parties, Defendant shall have an opportunity to amend its invalidity contentions.

Accordingly, the Court **DENIES** Rembrandt's motion to compel further responses to the interrogatories and requests for production identified in this issue.

### b. Issue 2: Limiting Certain Responses and Production to "Representative" Test Cups (Interrogatory 1, Requests for Production 1-3, 27)

In response to Interrogatory No. 1, and Requests for Production 1-3, and 27, Innovacon's responses were based on "representative" products. Rembrandt objects to the reliance on representative products and seeks to compel exact compliance with its requests as to each test cup sold by Innovacon and its affiliates. Rembrandt argues that its requests call for "non-duplicative information regarding the instructions for use, the design, the development, and the regulatory approval of Innovacon's and its affiliates' test cups." ECF No. 127 at 7.

At oral argument, Innovacon brought demonstrative examples of the test cups it designated as "representative" including the iCup Dx Pro, iCup A.D., Amedicheck, DrugSmart and UScreen, which can also be categorized as "the round cup, the square cup, and the backpack cup." Innovacon explained that due to the nature of the products, the requests at issue were duplicative and burdensome. For example, Interrogatory 1 seeks to identify of all products based in part on SKU number.[2] Innovacon submits a single product could have dozens of SKUs, and Innovacon had identified 115 separate SKUs for three designs. Requests for Production numbers 1-3 seek, for each item identified in response to Interrogatory 1, production of (1) ten sample cups, (2) test cup inserts for each, and (3) instructions for use. As a result, the practical effect of Rembrandt's request could result in the production at least 1,150 test cups along with inserts and instructions for use that are identical in all respects relevant to the patent litigation, *i.e.*, the structure of the cup. Innovacon explained that any differences in the products, inserts, or instructions would be irrelevant to the litigation, such as the brand associated with the test cup (*e.g.* CVS brand vs. Wal-mart brand), and possibly the number of strips, orientation of strips or the type of drug for which the cup was testing. Innovacon concludes that the extensive production sought is duplicative, burdensome, and disproportionate to the needs of the case. What is relevant according to Innovacon and what it has agreed to produce is design file histories and regulatory submissions for all accused products. ECF No. 127-1 at 8:10-11.

Rembrandt explained that it can not *know* with certainty that the products, inserts, and instructions are the same without reviewing them, and is concerned that Innovacon gets to unilaterally select representative samples. Rembrandt also argued that while some of the cups, inserts and instructions may be the same, what was said to regulatory agencies may have differed. Rembrandt understands that Innovacon's parent, Alere, Inc.

---

[2] SKU stands for "Stock Keeping Unit" and is identified with individual bar codes.

5

3:16-cv-0698 CAB (NLS)

("Alere"), purchased companies and brought products in-house as result of those acquisitions and mergers. Rembrandt contends information that may have been provided to governmental and regulatory agencies may have included comparisons to other products, and Rembrandt argues, makes the licenses and regulatory certifications relevant to infringement. Innovacon challenges this assessment, and submits that the "regulatory licenses, approvals, or certifications" sought via Request for Production 27 do not reflect what Innovacon said about the products, but is rather the government's assessment.

The Court agrees with Innovacon. The production of duplicative and irrelevant product samples, inserts, and instructions is disproportionate to the needs of the case and unduly burdensome. Further, Rembrandt has not articulated the relevance of the regulatory licenses, approvals and certifications to its infringement analysis sufficient to justify production for each individual test cup and overcome the burdensome nature of the request. Rembrandt's motion to compel a further response to Interrogatory 1, and further production in response to Request for Production numbers 1-3 and 27 is **DENIED.**

### c. Issue 4: Reliance on Rule 33(d) without Identifying Products (Requests for Production 12 and 14)

In response to Interrogatory numbers 12 and 14, Innovacon relied on Federal Rule of Civil Procedure 33(d), which permits a party to refer to its document production in lieu of a response. Rembrandt objected to the responses as insufficient because no documents or Bates ranges were identified in response to Interrogatory 12, and in response to Interrogatory 14, the Bates ranges identified included only product labels and inserts.

The parties appear to have reached some agreement on this issue, at least in the course of oral argument. Innovacon represented to the Court that at the time of its response, review and production was not complete, but that Innovacon had agreed to fully supplement its responses to identify Bates ranges as it produces additional documents.

///

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Rembrandt's motion to compel further responses to Interrogatories 12 and 14.

### d. Issue 5: Discovery Requests Directed to Verifying Sales Data (Requests for Production 28-31, 39, 42-43)

Rembrandt issued several requests for production (28-31, 39, and 42-43) that sought broad categories of "contracts regarding the manufacture and sale of test cups" including volume, market share, and revenue. ECF No. 127 at 12; *see also* ECF No. 130-1 at 92-101, 125-129, 134-141. Innovacon objected to these requests as overbroad and burdensome, as well as irrelevant and disproportionate to the claims at issue.

In the Joint Motion and at oral argument, Innovacon argued that the requested contracts between Innovacon and its affiliates will not verify the sales data it provided. Innovacon already produced sales data from its financial data base on a product-by-product basis for the calculation of damages per the agreement. It contends that a deposition of an appropriate witness as to how that data was collected is a more efficient and focused discovery vehicle.

Rembrandt countered that the financial information was provided without any information to back up Innovacon's figures, and without "back up" information, Rembrandt has no basis to challenge or cross examine a deponent. Rembrandt argues that contracts such as merger agreements between companies include a purchase price based on revenue and so "baked in" to the purchase price is an indication of units sold. Rembrandt also asserts that agreements may be relevant to alter ego allegations.

In response, Innovacon pointed out that most contracts within the scope of Rembrandt's requests are outside the relevant time period, and thus still unable to verify any sales within the relevant time period. Additionally, Innovacon argues it provided information for all its affiliates, rendering alter ego discovery moot.

The Court is not persuaded by Rembrandt's argument that the contracts it seeks in the categories identified will verify the sales data provided. ███████

███████

| | |
|---|---|
| 1 | ███████████████████████████████ |
| 2 | ███████████████████████████ Additionally, the Court finds no alter ego |

allegations in the operative complaint. Rembrandt's motion to compel further production in response to Request for Production numbers 28-31, 39, and 42-43 is **DENIED.**

### e. Issue 6: Requests re: Indicia of Nonobviousness (Interrogatory 6, Requests for Production 10 and 35)

Rembrandt asserts that Interrogatory 6 and Requests for Production numbers 10 and 35 seek evidence relevant to indicia of nonobviousness, and thus to Rembrandt's defenses to invalidity contentions. Interrogatory 6 seeks information regarding Innovacon and its affiliates' first awareness of the patents, Request 10 seeks all documents and things related to "knowledge of the Asserted Patents prior to filing this action," and Request 35 seeks all documents relating to "any comparison of Your test cups to any other product." ECF No. 127-1 at 6-10, 52-54, 112-115.

Innovacon does not dispute that evidence relating to nonobviousness will be admissible, but responds that the requests are again disproportionate to the needs of the case. Innovacon argues that dates of first awareness (Interrogatory 6 and RFP 10) are disproportionate because there is no dispute regarding knowledge of the patent given the 2004 Patent License Agreement. Similarly, Innovacon contends that Request 35 which seeks "[a]ll documents referring to or relating to any comparison of Your test cup to any other products," is disproportionate as there are no allegations of third party infringement and no indication that comparison to third party products will provide evidence of secondary considerations.

At oral argument, Rembrandt articulated that comparison information would provide an "objective measure of how Innovacon characterizes its own products," and comparisons to successful products equate to industry praise. As to awareness, Rembrandt argues because affiliates other than Innovacon may have designed certain products, the dates those companies gained awareness of the patent may be relevant.

Innovacon countered that the dates of awareness remain irrelevant due to the operation of the 2004 Patent License Agreement. Innovacon contends the product design and structure can be found within the design files, which Innovacon already agreed to produce.

The Court finds that the Interrogatory 6 and RFP 10 regarding first awareness are not proportional to the needs of the case. This case is primarily a breach of contract action governed by the 2004 Patent License Agreement. Extensive interrogatories and document production related to first awareness of products that are admittedly covered by the scope of the License Agreement are unnecessary and disproportionate.

As to Request No. 35, the Court agrees the request is overbroad and disproportionate by including "any other products." Rembrandt does not limit, qualify, or specify what it is seeking and did not provide adequate explanation of how such information might be relevant to secondary considerations sufficient to overcome the burdensome nature of the request.

Rembrandt's motion to compel further response to Interrogatory 6 and further production in response to Requests for Production 10 and 35 is **DENIED.**

### f. Issue 8: Requests re Information Provided to Abbott Laboratories (Requests for Production 59-62)

Innovacon is a subsidiary of Alere. Abbott Labs recently announced its intention to acquire Alere. Requests for Production Nos. 59-62 seek documents provided to or exchanged with Abbott Labs regarding the test cup business. ECF No. 127-1 at 173-180. Rembrandt contends this information was likely part of the due diligence leading to the Alere acquisition and such materials "bear on damages and the accuracy and completeness of the sales figures Innovacon provided Rembrandt. Innovacon objected to the requests as disproportionate, overbroad, and irrelevant to any claims and defenses asserted in the case. *Id.*

At oral argument, Innovacon explained that information given to Abbott Labs was not provided on a product level, or even at the level that would be limited to test cups.

Test cups are one component of "rapids," a subset of "reagents," which is in turn a subset of the toxicology business. In short, these documents would not yield evidence relevant to damages. Rembrandt argues that from the larger picture of "toxicology" or "reagents" or "rapids" it might be able to "glean" information regarding the subsets of products to piece together a larger picture, which would be relevant to its damages analysis.

The Court is satisfied that Innovacon has produced evidence of actual revenue and unit sales figures for the accused test cups. And, it has agreed to produce market share information. Nothing further is required. Rembrandt's motion to compel further production in response to Request for Production numbers 59-62 is **DENIED.**

### g. Issue 9: Email Production (Requests for Email Nos. 9 and 10)

Plaintiff issued requests for production of emails from 2 custodians, Scott Tallie and Anne Becknell, who Defendant identified as knowledgeable regarding the marketing/sales and design/use of the test cups. ECF No. 127 at 19. Defendant responded with objections to these email requests as overbroad and disproportionate, and that the search terms provided were not likely to yield responsive or proportional information.

At oral argument, counsel for Innovacon further explained that the design and marketing information for which these individuals were identified as knowledgeable is being produced in other, more appropriate and less costly forms, for example, Innovacon has already agreed to produce the design files, rendering emails on design duplicative. In addition, Innovacon represented to the Court that these two custodians have over one million emails constituting approximately 300 gigabytes of data that would need to be exported, searched, and reviewed at great cost (likely upwards of $30,000). This cost is particularly problematic to the Court in light of Innovacon's explanation that the search terms provided (Syntron; Tydings; Assurance and Biotech; 6,548,019; 019; and QuikScreen) are not likely to yield marketing or development information for which these custodians were identified as knowledgeable.

| | |
|---|---|
| 1 | The Court is persuaded by Innovacon's argument that the emails sought are |
| 2 | disproportionate, and any information Rembrandt seeks from these custodians could be |
| 3 | obtained in deposition. *See In re JDS Uniphase Corp. Securities Litig.*, C-02-1486 CW |
| 4 | (EDL), 2005 WL 6296194, at *2 (N.D. Cal. Sept. 23, 2005) (This is the type of |
| 5 | information [the moving party] can better seek through deposition, rather than through a |
| 6 | document request. If a deposition reveals a more specific, narrow document or set of |
| 7 | documents that are relevant, [the moving party] can request them."). Rembrandt's |
| 8 | motion to compel further production in response to Request for Emails numbers 9 and 10 |
| 9 | is **DENIED.** |

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Rembrandt's motion to compel consistent with the terms as set forth in this Order.

**IT IS SO ORDERED.**

Dated: October 3, 2017

Hon. Nita L. Stormes
United States Magistrate Judge